## DECLARATION of CHRISTOPHER KARABINAS

I, Christopher Karabinas, do hereby declare:

## BACKGROUND/EXPERIENCE

1. I am a Special Agent (SA) of the Department of Homeland Security (DHS), Homeland Security Investigations (HSI) and have been so employed since December 2010. I am currently assigned to the resident agent in charge office, Medford, Oregon. I have successfully completed the eleven-week Criminal Investigator Training Program (CITP) course at the Federal Law Enforcement Training Center and the sixteen-week Homeland Security Investigations Special Agent Training (HSISAT) course put on by U.S. Immigration and Customs Enforcement's (ICE) Homeland Security Investigations (HSI) Academy, where I learned the skills necessary to conduct federal criminal investigations, including investigating crime scenes, interviewing witnesses and suspects, and writing reports and affidavits. Prior to this, I was employed as a U.S. Customs and Border Protection Officer, Immigration Officer, and a U.S. Federal Air Marshal and have been a federal law enforcement officer since August of 2000. During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of money laundering, narcotics trafficking, fraud, smuggling, and theft. I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and my participation in other investigations. I am a participating member of the Medford Area Drug and Gang Enforcement Taskforce (MADGE) located in Medford Police Department's drugs and gang division. I have written and directly been involved in writing no fewer than twenty search

and seizure warrants and have participated in the service of no fewer than twenty federal search warrants involving criminal money laundering, drug violations, income tax charges and other criminal activities during which evidence of criminal violations was seized.

2. I have participated in searches of premises and assisted in evidence gathering by means of search warrant. I have received training in investigating money laundering and have had the opportunity to study and investigate numerous examples of money laundering schemes specifically pertaining to the laundering of drug proceeds. I have received approximately 80 hours of specialized training from the Federal Law Enforcement Training Center regarding asset forfeiture and financial investigations.

3. I have participated in hundreds of investigations at the federal, state, and local levels. These investigations have pertained to narcotics trafficking and laundering drug proceeds as well as a variety of criminal activities including bulk cash smuggling, alien smuggling, fraud, illegal exportation of munitions, interstate transportation of stolen property, and wire fraud.

## PURPOSE OF THIS DECLARATION

4. This declaration is submitted in support of a civil complaint *in rem* for forfeiture of $27,030 in U.S. currency seized from Frank Daloia on November 6, 2019, on Interstate 5 (I-5) in the vicinity of milepost 14 near Jackson, Oregon. As discussed below, I believe there is probable cause to believe that the $27,030 is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as it constitutes moneys intended to be furnished by any person in exchange for a controlled substance or the proceeds traceable to an exchange of controlled substance in violation of 21 U.S.C. § 841, specifically marijuana, a schedule I controlled substance, or moneys used or intended to be used to facilitate any violation of 21 U.S.C. § 841(a)(1),

specifically the manufacture and distribution of marijuana.

5.  I have participated in this investigation and the following information is derived from my personal observation, interviews, and review of physical evidence as well as review of reports generated by other law enforcement officials and discussions with other investigators who have personal knowledge of the matters covered in those reports, and from conversations with persons who have personal knowledge of the events described herein. I have not included all the details of the investigation, only those facts that I believe necessary to demonstrate a probable cause to proceed with civil forfeiture of the $27,030.

## SUMMARY OF THE INVESTIGATION

6.  On November 6, 2019, at approximately 12:05 pm, Oregon State Police (OSP) Trooper Peterson was working in a marked OSP patrol car on I-5 near milepost 12.  Trooper Peterson is a narcotics canine handler, and his canine, Jaxson, was with him in his patrol vehicle. Trooper Peterson observed a white Nissan Altima, California license 8DKK764, change lanes from the passing lane to the slow lane and not signal when it passed his patrol car.  He initiated a traffic stop. He approached the passenger side of the vehicle and immediately could smell a mild odor of marijuana coming from inside the Altima.  He explained to the driver the reason for the traffic stop. The driver stated that he always signals and even signals inside parking lots. He informed the driver that he would be issuing a warning for the traffic violation. He asked the driver for his driver's license, and the driver provided his Arizona driver's license identifying him as Frank Daloia with an address in Tucson, Arizona. Mr. Daloia also provided a rental agreement that showed the vehicle was a rental out of Tucson, Arizona. Mr. Daloia was

extremely nervous, very talkative, and his hands and legs were shaking, and he did not look at Trooper Peterson.

7. Trooper Peterson told Mr. Daloia that he would be issuing him a warning and asked him to step outside his vehicle. He asked Mr. Daloia where he was traveling to, and he said Portland, Oregon, to visit friends. He asked Mr. Daloia about work, and he said he sells minerals and gems for a living. He asked Mr. Daloia if he had been to Portland before and he said "yes." Mr. Daloia was rubbing his head and face every time he was asked a question.

8. Trooper Peterson asked Mr. Daloia if he had luggage inside the vehicle, and he stated it was in the trunk. He asked Mr. Daloia if there was marijuana in the vehicle, and Mr. Daloia rubbed his face, stated "no", and looked away. He asked Mr. Daloia if there was any cocaine in the vehicle, and he stated "no" and looked away. He asked Mr. Daloia if there were any large amounts of U.S. currency, and he stated "no" and looked down at the ground.

9. Trooper Peterson asked Mr. Daloia if he would consent to a search of his vehicle. Mr. Daloia stated that he did not know. Officer Peterson presented an OSP consent to search form. Mr. Daloia read the form and said he would show Trooper Peterson the trunk. Trooper Peterson told Mr. Daloia that he wanted to search the whole vehicle, and Mr. Daloia denied consent. Trooper Peterson advised Mr. Daloia that he would be running his narcotics canine around the vehicle and that if the canine showed a positive indication for narcotics then a probable cause search would take place. Trooper Peterson patted down Mr. Daloia for weapons and located a large amount of U.S. currency in his pants pocket. At that time, OSP Trooper Smith arrived on scene.

10. Trooper Peterson deployed his canine, Jaxson, and Jaxson showed a positive indication of narcotics in two locations on the vehicle. Trooper Peterson told Mr. Daloia that Jaxson showed a positive indication to a controlled substance, and Mr. Daloia stated, "Okay."

11. Trooper Peterson conducted a probable cause search of the vehicle that revealed a large empty black duffel bag in the trunk that smelled like marijuana, and a suitcase in the trunk. He located a silver bag in the suitcase that contained a large amount of U.S. currency. After locating the currency, Mr. Daloia was detained for the crime of money laundering. Mr. Daloia stated that he forgot about the money in the suitcase. Mr. Daloia was advised of his Miranda Rights and was asked if he would be willing to drive his vehicle back to the OSP patrol office and conduct an interview, and he replied "yes."

12. At the OSP patrol office, Mr. Daloia was interviewed by Trooper Peterson and OSP Detective Tom Willis. In summary, Mr. Daloia admitted to driving to Portland, Oregon, to purchase marijuana. He was hoping to purchase about ten pounds. This was his second trip to Oregon to purchase marijuana. The first trip was last month, and he purchased about ten pounds. He pays $1,600 per pound and he can sell it for $2,500 to $3,000 per pound in Arizona. He made approximately $5,000 from his first marijuana deal. The money located in his vehicle was his. About half the money was income from his gemstone business. He thinks that approximately $5,000 to $7,000 of the money was from his first marijuana transaction. The rest of the money was from his business income. Later in the interview, Mr. Daloia changed his story about the marijuana going to Arizona and stated it was going to a person in Los Angeles. He declined to say whom the marijuana was going to.

13. Mr. Daloia was asked for written consent to search his cell phones, including two Samsung flip style phones, an LG Smartphone and an Apple iPhone. Mr. Daloia reviewed the consent to search form and signed it. OSP examined the content of Mr. Daloia's cell phones and found no evidence of drug trafficking in communications or photos.

14. At the conclusion of the interview, Mr. Daloia was presented a DHS form 4607, Notice of Abandonment and Assent to Forfeiture of Prohibited or Seized Merchandise. He refused to sign the form. Mr. Daloia was then cited and released for the crime of money laundering.

15. Frank Daloia submitted an administrative claim for the money. In his claim he stated, "I claim all of the $27,030 and it is mine." He provided no documentation or other information supporting his claim.

16. Based on the above, and my training and investigative experience, I have probable cause to believe that the $27,030 in U.S. currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as it constitutes moneys intended to be furnished by any person in exchange for a controlled substance or the proceeds traceable to an exchange of controlled substance in violation of 21 U.S.C. § 841, specifically marijuana, a schedule I controlled substance, or moneys used or intended to be used to facilitate any violation of 21 U.S.C. § 841(a)(1), specifically the manufacture and distribution of marijuana.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 9th day of April 2020.

                                             *s/ Christopher Karabinas*

**Declaration of Christopher Karabinas**　　　　　　　　　　　　　　　　**Page 6**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Exhibit A**

Christopher Karabinas
Special Agent
Homeland Security Investigations